Hear ye, hear ye, hear ye, the United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning and welcome to the 11th Circuit. We have for our first case today United States of America v. Cross Senior Care Inc. And we will begin with Mr. Molinaro whenever you're ready. Thank you, Your Honor. Good morning. May it please the court, Jeffrey Molinaro on behalf of the appellant, Cross Senior Care. Your Honor, may I reserve three minutes for rebuttal? Yes. Thank you, Your Honor. Members of this panel, this case is more than a simple argument over 3,400 emails that could be sent by the click of a mouse. This case asks the court to determine the boundaries within which a government can use a civil investigative demand, an administrative subpoena. The government's own actions and arguments in this case demonstrate that all communications sought under Request 21 are not reasonably relevant to their investigation and temporal restrictions on a CID's enforcement and use are not a rewriting of the statute. The judgment of the lower court should be reversed. While I want to spend my time focusing on the overbreath and enforcement issues, I have to touch briefly on waiver. The government below argued that we waived on appeal. They concede that the lower court erred in adopting their position. But in a footnote, the government's entire waiver argument amounts to, it doesn't matter, it was harmless. However, I direct the court to the report and recommendation and the language of the lower court, it's clear that the waiver analysis tainted both the overbreath determination and the enforceability determination. At page 18 of the report and recommendation, the lower court expressly states with regard to overbreath, if the respondent had filed a petition to modify Request 21, it would have had a good chance of getting that request narrowed. Nearly a concession by the lower court that this may be too broad of an RFP. With regard to enforcement, at page 13 of the report and recommendation, the court said, if the respondent had timely objected, this dispute would have been resolved before the government was required to make an election. Dismissing the petition would effectively grant Cross Senior Care the relief it seeks despite its failure to timely object in accordance with 3733J2. So there was a tainting of the entire process. So it's important that if this court finds ultimately that the CID is enforceable, that at a minimum there should be a remand concerning the scope and narrowing of the request. With regard... Counsel, this is Judge Bego, may I ask you a question and I'm going to ask the other side the same question. Yes, Your Honor. Does the voluntary dismissal of Cross Senior Care from the Bell QTAM action make this case moot? Your Honor, we believe that the dismissal does make it moot for a couple of reasons. We know that below, the lower court or the government conceded that this CID is born from the Bell case and that they're investigating the same conduct. They were directly asked at page 30 of the transcript, there's no new case here, and their response was, there's no new case here. They then consented to the voluntary dismissal in that case, as they're required to do under the law, and we know that voluntary dismissals are self-executing and they moot all pending motions before that court. Now the government relies on Youssef and the Vaughn case, but that doesn't talk about enforcement of a CID. That talks about whether there's a res judicata effect of bringing a suit. No one's saying that there's some sort of res judicata effect to bringing a false claims action against Cross Senior Care. Counsel. Yes, Your Honor. Please pause. You concede, do you not, that this is an underlying case for a CID? I mean, the government could have, they would know a case, anywhere in any court, correct? Your Honor, can you repeat the question, because you broke up when you were speaking, I'm sorry. Sorry for the break up. The government could have filed the CID even if there had never been a lawsuit actually filed in court, is that correct? That's correct, Your Honor. Counsel, let me finish. So if they could have filed a CID without a court, without a court lawsuit pending, what difference does it make that one had been pending but was dismissed without prejudice? Well, I think here, one is because they said they're investigating, they are investigating one and the same what was brought with Bell. So it's the same investigation. So if it's the same investigation, then if they want to start a new investigation, they can certainly file a new CID. But when they're saying we're investigating the same conduct as Bell, and we didn't intervene, and then we said, well, you can dismiss Bell, and now the procedural posture in Bell is that we're already in dispositive motions, and the deadline to amend pleadings has already been cut off, there's effectively, that investigation regarding the Bell conduct is closed. If they want to open a new investigation and issue a new CID, I don't think there's a problem with that. But enforcement of the current CID... Counsel, why is it closed? The government can always file, the government can file a lawsuit now. Well, the government could intervene in the lawsuit that is currently pending. No, counsel. If the lawsuit was dismissed without prejudice, the government doesn't have to intervene if Bell gives up the intention to file a lawsuit. The government can file its own lawsuit, can't it not? Yeah, there's no, yes, your honor, there's no res judicata, there's no res judicata effect. If the government can file its own lawsuit, then the CID is still open and arguably viable. But I think, your honor, even if it is viable, the question is whether it's enforceable. We have an enforceability issue as well, because... That's what I meant by viable. The fact that it was a lawsuit and that the relator has dismissed some of the defendants or the defendants without prejudice doesn't affect the government's ability to file or enforce a CID. Well, I think there's a difference between filing a false claims act and enforcing a subpoena in a case where a party is merely voluntarily dismissed. We know that if the government's a party, they couldn't use a CID. The Avco court said it would be an absurd construction of the statute to say that they would be allowed to enter the litigation and use a CID while the rules of civil procedure govern. And here we essentially have the same case because the government... The government didn't intervene in this lawsuit and then file a CID. The government has a CID. Relator has dismissed defendants without prejudice. I don't see how that possibly affects the right of the government to enforce the CID. Well, your honor, I think what we have here is we have to remember, if we're enforcing the CID and there's a relator who represents their interest, we're having two different standards. And the problem with two different standards for the same documents, undiscoverable when the relator is representing their interest, discoverable when the government is sitting on the sideline. The statute allows for the government at 3733A1 to share all that information with the relator. In essence, it makes the voluntary dismissal null and void because it's voluntary. It would eviscerate Rule 26 because evidence which the relator could not get, the government now can ask while a live and active case is pending, could ask, could seek, could get, and then hand it over under the plain language of 3733A1 to the relator. And there's no indication under the False Claims Act that that was ever the purpose of a CID. Your position is the government can't enforce the CID as long as the relator has potential lawsuits. Well, we know that once the government makes an intervention decision one way or another, that's the Kiernan Hospital case, they couldn't issue. Even Kiernan Hospital said, I believe in that case... I'm sorry, I shouldn't have given you the open door to address this case. They filed the CID. It was pending before the government was forced to make a decision about whether to intervene and continue investigation. They didn't have the opportunity. They said they had enough time, they couldn't, without waiving their right to continue, they weren't going to intervene at that time. That wasn't a decision not to intervene at that time until we got more information through the CID. Well, under the statute, there's no in-between. There's not a, well, we're half-in, half-out. It's either you have to intervene or you don't. And if you don't, you can come back later. Two minutes remaining. Thank you, thank you. If you don't, you have the ability to come in later. But there's no indication under the False Claims Act that this was designed to essentially be an end-run around Rule 26, where information could then be shared with the relator. You say once the government says, we don't have enough information, waiving a right to intervene in the future, or to bring a lawsuit in the future, we just did not intervene now. If the government can't do that, if the government files that, that's your position. Can you repeat the last line, Your Honor? You were breaking up again. I'm sorry. That's your position. No, no, the sentence before that. I didn't hear your question. I'm sorry. Your position is, if the government says, we don't have enough information, would like to continue to investigate and get the proceeds of our CID determination, that ends the CID's enforceability at that moment. Once they make, I think, okay, I understand your question. Once the decision to intervene is made, even if it's declined, that the rules of civil procedure apply to the litigation. And that means the practical effect would be if they intervened, they could not use the CID. And if they don't intervene where they have a real party and interest protecting their interest, they wouldn't be able to use the CID because they could use that information and hand it to a relator and eviscerate Rule 26. They can use the CID and hand it to a relator anyway. Let's say the district court had given them a deadline of a year later. During the course of that year, they got some of the emails and they handed them to the relator. That's perfectly permissible. Correct. And that's why we're saying, Your Honor, it's an absurd construction of the statute to say that a relator who's representing the government's interest is bound by Rule 26, could not ask the question and get documents. Under when litigation has already commenced, but that the government could sit on the sideline and then ask the same question, get those documents, hand them to the relator so that Rule 26 is a nullity. There's no indication. That is inherent counsel in the entire CID process. And when you say the relator is representing the government's interest, that has yet to be determined. The government's interest is in deciding whether or not to gather the documents and release them to the CID process. The relator isn't representing the government's interest in determining whether to hand them to the CID process. No, Your Honor, the relator stands in the shoes of the government. No, it doesn't. Because the relator doesn't get to make the determination whether the government will intervene. They are not the same party. And the relator does not represent the government. And the underlying lawsuits are inextricably linked. Your Honor, under that logic, the Supreme Court's decision in Einstein would be eviscerated. Because we know, even the cases the government cites, the government cites Vaughan. And Vaughan's talking about a res judicata effect, but Vaughan makes clear the government's bound by the merits. So the relator has to stand in the shoes, as the Second Circuit said in Crindler v. Crindler, Crindler v. United Tech, that they have to stand in the shoes of the government to at least some capacity because they have the ability to bring the suit. They have the ability to file suit. And if they get a merits-based decision, the government's bound. If they lose, the government's bound. In counsel, it's representing the government's interest. We are at the CID step. The government's interest is in determining whether or not to take over the litigation. Your Honor, I think that determination has to be made through whether to intervene or not. Now the question is whether they can still enforce the CID after they've said, well, we're not going to be a part. And one, we have this Rule 26 issue. They didn't say we don't want to be a part. They said we don't have enough information at this time. We will make a decision later. We want to continue to force the CID and find out what the facts are and whether or not. We can't intervene at this time because we don't have enough information. It's not decided not to intervene, period. Your Honor, there's nothing, and the government doesn't argue this, doesn't even argue it. There's nothing in the statute that allows them to say, we're not intervening right now because we're still investigating. It's either we're in or we're out. And they're out, so they can't enforce a statute that would either allow them to go around Rule 26 or, on the other hand, hold the document and not share it. Counsel, they actually specifically said that they were not intervening at this time. I mean, isn't that what they said? There's nothing that prevents them from intervening at a later point in time if the litigation is still ongoing. Yes, Your Honor, exactly right. Now the question then becomes, well, what do they get during that time? And the statute itself at 3730C3 makes clear what they get. When they hop out, they get all the pleadings. They get discovery. They get deposition transcripts. They have a right to communicate with the relator. They have the right to intervene later on for good cause. If they see this going to a merits-based decision they don't like, they may want to hop in and settle the case so there's not bad case. Well, there's certainly a public policy reason behind why the government may want to intervene. But the question really becomes, are they allowed to enforce what the D.C. Circuit describes as an extraordinary and ex parte means of discovery after they've said, well, we're going to sit this out and the rules of civil procedure start to run because the case is unsealed and the parties are actively litigating? Counsel, I don't think that that's an accurate description of what's going on here. But I'll let you think about that because we've taken you over and you can discuss it on your rebuttal. You've reserved three minutes for rebuttal. What we're going to do, though, is we're going to take a quick break. Judge Carnes, I think you're breaking up a little bit and it may be just a bad connection. I'm sorry to ask you to do this. But would you mind dropping the line, Judge Carnes? Not at all. Thank you. Thank you. Judge Rosenbaum, do I stay on the call then? Yes. Everybody else stay on and we will get Judge Carnes back on shortly. Okay. Thank you. No, that's okay. Thank you very much for doing it because I was having trouble as well. Thank you. And I will say, Mr. Molinaro, you did a great job of responding to the questions, which were difficult to hear. Thank you. That's part of the reason we, you know, allowed you to go over time because I know it was a difficult connection. I appreciate that. Thank you. Okay. I'm back in. Can you all hear me? Yes. Thank you very much. Do me a favor. And if I start to break up, let me know then and I'll just shut up, which I'm sure will make some of the lawyers happy. We wouldn't want to miss out on what you have to say. But we will let you know. All right. Okay. Let's hear from Mr. Himmelfarb. Thank you, Your Honor. It pleases the Court. My name is Edward Himmelfarb with the Department of Justice representing the United States. The first thing I'd like to say is that Judge Carnes is completely correct that if our investigation turns up fraud against the government by cross-senior care, we can bring our own action. We also under Section 3730C3, we can ask the court in the related case to allow us to come back into the case when showing of good cause. So there are two options open to us. Yes, we did say when we declined to intervene at this time in the related action that we will continue to investigate. And, yes, the related dismissal of cross-senior care and a number of other cross-companies from her case was without prejudice to the government. So, you know, here we are. We're trying to continue our investigation. Now, I'd like to say a quick word about timing here. Counsel, before you proceed, can you just clarify for me because I'm somewhat confused by the government's position on the waiver argument. It appears to me from your brief that the government is either abandoning or conceding the waiver argument. Can you please address that? We do not think that the waiver argument that a recipient of a CID is compelled to bring an action to modify the CID within 20 days precludes the recipient from, in the future, raising some of the issues that would have been raised then. We think that that's not correct understanding of the law. This is an area that hasn't been used very much and still kind of shaky, but that's our understanding of it. As for the magistrate judge's opinion or recommendation, I should say, there are really alternative holdings. Waiver was an alternative holding. The magistrate judge spent about a page talking about it. At the end of that discussion page, he said, in all events, I have considered the respondent's objections and they are unmeritorious. He then spent about eight pages discussing the merits of Cross's objections to the CID. These are really alternatives. The fact that he mentioned waiver, we seem to think that waiver is a good legal argument. It's relevant because the report and recommendation, as approved by the district judge, stands on an independent basis. That's our position on waiver. All right. Thank you. I just wanted to get back for a minute to the timing issue because that seems to, in their briefs, Cross seems to conflate two aspects of the CID, which are very, very different. The first is the issuance of the CID and the second, which in this case occurred over a year later, filing of a petition to enforce the CID. Those are covered by two different provisions, subsections of Section 3733. A-1 addresses the issuance of the CID. It has some timing limitations built into it. Section 3733J-1 deals with a petition to enforce the CID. That starts with the following phrase, whenever any person fails to comply with any civil investigative demand issued under subsection A. It's saying that the limitations of subsection A, which definitely exists, do not apply to an enforcement petition. Here, it's not even necessary to address this because we filed a petition to enforce the CID before the notice was filed in the related case. The case, we had not even made a decision by that point whether to intervene in the related case. Even if it conceivably could come up with some hypothetical case in which somebody could argue that the limitations of A should be read into J, this is certainly not that case because even if those limitations did apply, we complied with them. The CID, the petition to enforce the CID was filed in a timely manner, and it should be enforced. Let me say one thing briefly about the discovery issue. We have the right to enforce the CID, and we can collect information from cross-senior care and decide whether to pursue our own lawsuit or, as I said at the beginning, to ask the court in the related case to let us intervene there for good cause. The information that we get from the recipient of the CID is directly applicable to us in our own investigation, and I would just point out that cross-senior care is no longer a defendant in the related case. That was part of the dismissal without prejudice, and so there would be no reason for us to hand over the materials we received anyway, but we would be entitled to do that because we're entitled on our own to enforce the CID. This is not an end-runaround, any discovery request or discovery rules under the federal rules. The False Claims Act allows people to withhold information that's protected from disclosure. Here in request number 21, Cross told us that there were, I think the number is 260 emails that were subject to attorney-client privilege, and that's fine. But the federal rules of civil procedure generally don't apply to CID. And I'd be happy to answer any questions from the court. I've come to read the provision of the statute. I'm sorry, Jim. Yeah. I have bad news for you. I think you're breaking up again. I'm sorry. I will avoid adding confusion. No, that's okay. We can break and let you try to call in again if you'd like. Are you on the speaker, Judge Carnes, or not? Let me just pass on that, and y'all go ahead. I'm sorry, I don't have a landline. This is a cell phone. It's just a problem. If you can hear me, I would like to know from the government counsel, how did the deadline originate? Was there a motion or request of the district court, and if so, by whom, to set a deadline for the government deciding whether to intervene? Your Honor, under the statute, we have a certain amount of time to do an investigation, and we can request extensions. In fact, a lot of False Claims Act investigations are quite complex, and we need to get multiple extensions. What happens at that point is the judges sometimes become rather impatient, and they say, no more, this is it. Basically, that's what happened here. We got a deadline for investigation with respect to the relator's case. At that point, we had to make a decision, and we were not finished with our investigation. We told the court, we're not finished with our investigation, and we do not plan to intervene at this time. That's basically what happened. Thank you. By the way, we can hear you again, Judge Carnes. Thanks. Yeah. So, that's pretty much what I have to say. I'd be happy to try to answer any other questions the court may have for me. All right. Well, thank you very much, Mr. Hemmelkarp. We will hear back from Mr. Molinaro. Thank you, Your Honor. Mr. Molinaro, I'm going to give you two extra minutes on the rebuttal, because there was so much breakup on your first attempt here. So, you'll have five minutes for rebuttal. Thank you, Your Honor. Briefly, just to direct, to supplement to the question posed by Judge Carnes, I believe it was after six requests for extension of time. The government waited 20 months to file a CID. The government waited six months to file a petition for enforcement in this case. The government sat on their hands and now complains that they should be allowed to continue extra time to investigate when they didn't, for lack of a better term of art, they weren't vigorous and diligent in perfecting their right to even enforce the CID in the first place because of a six-month delay. Did you argue that to the district court, that they shouldn't be allowed to enforce the CID because they had waited so long, had been dilatory in enforcing it? I believe – we didn't say it was a waiver. Candidly, we didn't say it was a waiver. I'm not asking about the waiver. I'm asking if you argued to the district court, look, don't enforce this. They've piddled around and haven't done it with dispatch and that has prejudiced us, so deny the motion to enforce on that basis. Not on a prejudice basis, no, Your Honor. I believe what we argued was that just the time in general, giving them more time, it seems that to say that the – and how we say it in our reply brief – that the lower court says we sat on our hands is a misreading, a clearly erroneous reading of the facts because we didn't have an affirmative duty to move to set aside. The government has an affirmative duty if they want to enforce. One quick question. One quick question. Did you ask the district court to give the government a deadline? In the Bell case? I honestly don't know the answer. I'm sorry. I'm asking, did you ask the district court to give the government a deadline to decide whether or not to intervene? I don't believe we did. I believe the court did it on its own after the government moved for its sixth motion in the Bell case for a stay to keep the case unsealed. Or keep the case sealed. Excuse me, Your Honor. I'm sorry. I misspoke. With regard to the government's position on Section J1, even the government's cases that they cite make clear whenever doesn't mean whenever. Whenever doesn't mean whenever. That's almost the simplest argument I can make. They cite Markwood. Markwood is a judicially created doctrine that isn't considered a rewriting of the statute. Whenever doesn't mean whenever. It doesn't mean in cases of bad faith or harassment or abusive process. Excuse me, Your Honor. Thank you. They cite Avco Corp. which says it's not reasonable to construct it in a way that they could intervene and use. So we know that the court has the power to rewrite the statute. Or not to rewrite the statute, to interpret the statute in a manner that wouldn't constitute a rewriting. And briefly, with regard to scope and relevance, from the beginning of the case, the government has backpedaled from the request. At docket entry 1-10, there's an email on June 14 from Attorney Bloor to Ittleman asking for a callback agreement. And while that may be fine in two civil litigants disputing, the government's bound by the Fourth Amendment. It's a constitutional protection. It's not a constitutional remedy. We're protected from disclosing irrelevant documents up front. It can't be in the words of the government. We will return any materials later that will be determined outside the scope of our investigation. So from the beginning, they've conceded all doesn't mean all. They said all doesn't mean personal emails. They said that at 1-15, docket entry 1-15, August 24, an email from Bloor to Ittleman. They then said all doesn't really mean all. It means 15 broad categories. And then when we get to our answer brief, they say, well, all doesn't really mean all. We have the right to investigate, and we're really looking for communications that would demonstrate individuals responsible for submitting claims to federal health care programs, for setting corporate policies on the submission of claims, and directing actions of lower-level staff. Those are well and good, but that's already been disclosed. We've given 800-something emails, and we've responded to 20 other RFPs. So we know all doesn't mean all. We know that whenever doesn't mean whenever. There can be a reasonable restriction, and all communication sought is necessarily broader, even under the reasonably relevant standard of a CID, which is broad and sweeping. Even under that standard... Counsel, your time has expired. May I briefly finish my thought and conclude, Your Honor? You maybe just very quickly conclude, because I did give you some extra time. Thank you, Your Honor. Just in summation on the relevance point, we know that all communications is necessarily broader than those three categories which they present on their answer brief, even under a reasonably relevant standard. So for those reasons, we ask that the Court reverse. Thank you, Your Honor. All right. Thank you very much.